1

2

3

4

5

6                     UNITED STATES DISTRICT COURT

7                    EASTERN DISTRICT OF CALIFORNIA

8

9   LT. RICHARD T. GENGLER and LT.   )   1:06-cv-0362 OWW LJO
    DANIEL S. McSEVENEY,             )
10                                    )   FINDINGS OF FACT AND
         Plaintiffs/Petitioners,     )   CONCLUSIONS OF LAW RE:
11                                    )   MOTION REQUESTING ORDER
         v.                          )   REQUESTING THAT GENGLER
12                                    )   REMAIN IN CHICAGO UNTIL
    UNITED STATES OF AMERICA THROUGH )   DECEMBER 8, 2006 OR PENDING
13  ITS DEPARTMENT OF DEFENSE AND    )   DECISION ON THE MERITS
    NAVY; AND SECRETARY DONALD C.    )   (DOC. 81)
14  WINTER,                          )
                                     )   AND
15       Defendants/Respondents.     )
                                     )   ORDER RE: BAIL ON HABEAS
16  _____)   CORPUS PETITION

17

18       Before this Court for decision is Petitioner Richard T.

19  Gengler's motion requesting an order for admission to release

20  from Defendants' custody to permit Gengler to remain in Chicago

21  until December 8, 2006, or pending a decision on the merits of

22  his amended habeas corpus petition.  (Doc. 81, filed Oct. 13,

23  2006).  Although there are two Petitioners in this habeas corpus

24  case, Lt. Cmdr. Gengler and Lt. Cmdr. Daniel S. McSeveney, the

25  present motion relates solely to Lt. Cmdr. Gengler.  Much of the

26  background and early procedural history of this case is set forth

27  in detail in this Court's Memorandum Decision and Order Re:

28  Defendants' [First] Motion to Dismiss (Doc. 49, filed Aug. 24,

                                  1

2006) at 1-9.

## I. FINDINGS OF FACT

1.   Petitioner Gengler is a Naval Officer and Aviator who is stationed with the Operational Test Evaluation Squadron Nine (VX-9) in China Lake, California.  He entered the Navy Reserve on April 12, 1996, upon signing an "Aviation Officer Candidate Program Service Agreement" (hereinafter "the Service Agreement"). Exhibit A, Declaration of Lt. Richard T. Gengler in Support of Motion for Order for Entry of Temporary Restraining Order and Order to Show Cause Re Preliminary Injunction, dated March 29, 2006 (hereinafter "Gengler Decl.") (Doc. 4).  The Service Agreement is a contract of adhesion drafted by the Navy and signed by its representative, Lt. Scott A. Potas.[1]

2.   The Service Agreement provides that Gengler will accept a commission as a Reserve Officer in the Navy.  (Service Agreement, Doc. 4, Ex. A, at ¶ 1d).  The Agreement also states: "a commission as an (sic) Reserve Officer is held at the pleasure of the President."  (Doc. 4, Ex. A, at ¶1e(1)).

3.   The Service Agreement further provides that "upon acceptance of a commission, [Gengler] will be required to serve at least eight years as a Reserve Officer in the United States Navy from the date of appointment to commissioned grade" (Doc. 4, Ex. A, at ¶1e(2)), "any portion of this eight-year period not

---

[1] Gengler's Service agreement is identical in content to that of Petitioner McSeveney.  Exhibit A, Declaration of Lt. Daniel S. McSeveney in Support of Motion for Order for Entry of Temporary Restraining Order and Order to Show Cause Re Preliminary Injunction, dated April 18, 1996.  (Doc. 5).

2

1    served on active duty will be served on inactive duty."  (Doc. 4,

2    Ex. A, at ¶1e(3)).  On October 11, 1996, Gengler was appointed as

3    commissioned officer in the Navy Reserve.  (Gengler Decl. at ¶

4    4).  Accordingly, his eight-year minimum period of service as a

5    commissioned Reserve Officer was completed in October 2004.

6        4.   The Service Agreement further states that "a

7    resignation of [Gengler's] commission as a Reserve Officer

8    submitted prior to the completion of this eight-year term will

9    normally be rejected and, after this period, may be accepted or

10   rejected by the President, as the needs of the service may then

11   require."  (Doc. 4, Ex. A, at ¶ 1e(4)).

12       5.   Separate from the provisions related to service as a

13   Reserve Officer, the Service Agreement contains specific

14   provisions relating to an agreed-upon period of service on active

15   duty.  Paragraph 2 of the Agreement states, "I consent to serve

16   on active duty as a commissioned officer for a period of seven

17   years from date of designation as a Naval Aviator (unless sooner

18   released to inactive duty or discharged by the Chief of Naval

19   Personnel.[]) Doc. 4, Ex. A, at ¶ 2).  Petitioner Gengler was

20   designated as a Naval Aviator on April 2, 1999 and therefore his

21   seven-year period of active duty was completed on April 2, 2006.[2]

22

23       [2] During oral argument on this motion, Petitioner's counsel
24   represented to the Court that Gengler's designation as a Naval
     Aviator occurred on April 2, 1999.  The government did not
25   dispute this and admits in its Declaration of Lieutenant
     Commander Jeremy W. Gunther, USN dated July 27, 2006, submitted
26   in opposition to Petitioners' ex parte motion for order for entry
     of temporary restraining order and order to show cause re entry
27   of preliminary injunction that Gengler was "winged" in April
28   1999.

                                3

1  At present he remains in an active duty status.

2      6.   Another paragraph in the Service Agreement sets forth

3  the procedure by which Gengler may effect his release from active

4  duty: "I must notify the Chief of Naval Personnel . . . of this

5  desire at least nine months prior to the end of my obligated

6  service . . . failure to so notify the Chief of Naval Personnel .

7  . . constitutes a desire on my part to be extended on active duty

8  for an indefinite period of time."  (Doc. 4, Ex. A, at ¶ 2).[3]

9      8.   The following statute was enacted by Congress in 1989,

10  some seven years before the Navy presented Gengler with his

11  Service Agreement:

12      § 653.  Minimum Service Requirement for Certain flight
        Crew Positions.

13

14      (a) Pilots.--The minimum service obligation of any
        member who successfully completes training in the armed
        forces as a pilot shall be 8 years, if the member is

15      trained to fly fixed-wing jet aircraft, or 6 years, if
        the member is trained to fly any other type of

16      aircraft.
        ...

17      (c) Definition.  In this section, the term "service
        obligation" means the period of active duty or, in the

18      case of a member of a reserve component who completed
        flight training in an active duty for training status

19      as a member of a reserve component, the period of
        service in an active status in the Selected Reserve

20      required to be served after -

21      (1) completion of undergraduate pilot training in the
        case of training, as a pilot;

22

23      9.   The eight-year statutory service term of § 653 sets out

24  a minimum active duty service obligation but does not state that

25

26      [3] The Service Agreement quotes 10 U.S.C. sections 671a and

27  671b, which allow for limited extensions of active duty service
    in wartime.  (Doc. 4, Ex. A, at ¶ f).  The Navy has not invoked

28  those statutes in this case.

4

1   any contract made in violation of the term is unenforceable.[4]

2       10.  Gengler's eight-year period of active duty after

3   successful completion of training as a pilot, terminates on April

4   2, 2007.

5       11.  Lt. Cmdr. Gengler has served with distinction during

6   his ten years in the Navy.  He has made two full deployments as a

7   strike fighter pilot on the aircraft carrier, USS CONSTELLATION.

8   He has flown numerous combat missions and logged combat time in

9   Operations Iraqi Freedom, Enduring Freedom, Southern Watch, and

10  others.  Petitioner Gengler has received two Air Medals (with

11  Combat Distinguishing Device), the Navy and Marine Corps

12  Commendation Medal (with Combat Distinguishing Device), the Navy

13  and Marine Corps Achievement Medal, among others.  Two of his

14  awards, an Air Medal and the Navy and Marine Corps Commendation

15  Medal, were given to him for individual acts of bravery as a

16  strike fighter pilot during Operation Iraqi Freedom.  (Doc. 77,

17  at ¶¶ 3-6).

18      12.  Gengler complied with his obligation to timely notify

19  the Chief of Naval Personnel of his request for Release from

20  Active Duty ("RAD") by submission of a series RAD requests dated

21  January 21, 2004, February 9, 2005, March 8, 2006 and July 21,

22  2006.  (Doc. 77, at ¶¶ 97-98).  The Navy denied all of the

23  requests and Gengler filed the appropriate administrative appeals

24  all of which were denied citing a variety of reasons, but all

25

26      [4] Gengler alleges that the Service Agreement with the seven-
27  year term was routinely used by the Navy from at least 1990
    through 1996.  (Verified Third Amended Petition, Doc. 77, filed
28  October 12, 2006, at ¶ 14).

essentially based on the position that he should serve eight years of active duty following flight training instead of seven. (Doc. 77, ¶¶ 99, 109-110).  On February 13, 2006, the Navy informed Lt. Cmdr. Gengler that he had exhausted his administrative remedies.  (Doc. 4, Ex. E; Doc. 77, at ¶ 101). This case was filed March 31, 2006.

13.  Petitioner Gengler has also alleged that between 2002 and 2004, the Navy has discharged at least eight Naval Aviators upon completion of their contractual seven-year term of active duty.  (Doc. 77, at ¶¶ 48-56).  He also asserts in his Petition and other documents, that the Navy has a surplus of Naval Aviators and has implemented various voluntary and involuntary separation Programs to discharge several hundred officers including approximately 300 pilots in September 2006.  (Doc. 77, at ¶¶ 37-47; Mem. Dec. Doc. 49, at 6-7).

14.  The March 31, 2006 Complaint alleges five causes of action, including one habeas corpus claim.  (Doc. 1).  Petitioner also sought a temporary restraining order to prevent the Respondents from changing his status to deployable or sending him outside the Continental United States.  (Mem. Dec., Doc. 49, at 8).

15.  The parties reached an agreement as to non-deployment. There was a period of internal discussion by the Navy regarding the discharge request.  At some point prior to July 25, 2006, the Navy notified Petitioner's counsel that Gengler would not be discharged.

16.  The parties then litigated the motion for a temporary restraining order, which was denied on August 10, 2006, except

6

1  that the Navy would be required to provide at least 20 days'

2  notice of any intent to change Petitioner Gengler's current non-

3  deployment status so he could make application for appropriate

4  relief to the Court should that occur.  (Order Re: Plaintiff's Ex

5  Parte Motion for Entry of Temporary Restraining Order and Order

6  to Show Cause Re Entry of Preliminary Injunction; and Order Re

7  Petition for Habeas Corpus (Doc. 37); (Mem. Dec., Doc. 49, at 8-

8  9).

9      17.   On August 3, 2006, in lieu of Answer, the government

10 filed its first motion to dismiss.  (Doc. 31).  Following

11 briefing, that motion was decided on August 24, 2006.  The motion

12 to dismiss for lack of subject matter jurisdiction was granted in

13 part and denied in part, finding that the only valid basis for

14 jurisdiction is habeas corpus.  (Mem. Dec., Doc. 49, at 43-44).

15 The motion to dismiss for failure to state a claim, pursuant to

16 Fed. R. Civ. Pro. 12(b)(6), was granted in part and denied in

17 part.  The motion to dismiss was denied without prejudice,

18 subject to repleading, on a contract-based habeas corpus claim.

19 The court identified a list of factors to assist it in

20 determining whether the seven-year active duty provision in the

21 Service Agreement would be enforced, or whether the statutory

22 eight-year term must be given effect.  The motion to dismiss was

23 granted with leave to amend on the equitable estoppel claim;

24 requiring re-pleading with greater specificity.  (Mem. Dec., Doc.

25 49, at 36-39, 44).

26     18.   Following this ruling, Petitioner Gengler filed several

27 subsequent Petitions for Writs of Habeas Corpus.  The present

28 petition (Doc. 77) was ordered filed at a hearing on October 23,

1  2006.

2      19.   While the case was pending, Lt. Cmdr. Gengler's

3  circumstances changed.   He was admitted to the Graduate School of

4  Business at the University of Chicago.   (Doc. 77, at ¶ 122).   The

5  term was scheduled to begin in September 2006.   In summer 2006,

6  Petitioner Gengler trained his replacement at his squadron.

7  (Doc. 77, at ¶ 130).   He asked his Commanding Officer, Captain

8  Fecht, for 60 days of leave to attend school.   The request was

9  granted on August 16, 2006.   (Doc. 77, at ¶¶ 131-134).

10  Petitioner Gengler was also told approximately a week later that

11  he would no longer fly for the Navy. (Doc. 81, at 1).   Gengler

12  paid $17,000 in tuition and fees and enrolled in school.   (Doc.

13  77, at ¶ 141).   The first quarter at business school is the most

14  critical.   If Petitioner Gengler is required to leave before it

15  is completed, he will be forced to drop out or fail school and

16  lose his tuition.   (Doc. 81, Gengler Decl. at ¶¶ 14-16).

17      20.   The Respondents filed a second motion, to dismiss the

18  habeas corpus petitions, on October 12, 2006.   (Doc. 78).   The

19  government argues that there is no subject matter jurisdiction

20  and that the equitable estoppel claim fails to state a cause of

21  action.   According to the government, an officer's commission is

22  indefinite in term, and an officer serves at the pleasure of the

23  President and can only resign a commission effective upon

24  acceptance, which means, a court may not order that the

25  resignation be accepted and the officer discharged.   (Doc. 78, at

26  7-17).   The government cites SECNAV Instruction 1920.6C and

27  MILPERSMAN 1920-130, 1920-200 for these propositions.   (Doc. 78,

28  at 14-15).   Under this position, the length of time of active

1  duty service is limited by neither the Service Agreement nor by
2  § 653.

3      21.  The government further agrues the court has no
4  authority to determine the legality of the contract in dispute,
5  the Navy's actions, and canot meddle inthe Navy's conduct of its
6  business.

7      22.  Petitioner Gengler counters that the government
8  conflates two separate concepts: service as a commissioned
9  Reserve Officer and service on active duty.  A Reserve Officer
10  may serve either on active or inactive duty status.  The Service
11  Agreement provides for service on active duty for seven years
12  following successful completion of flight training, and this is
13  fully consistent with the requirement that service as a
14  commissioned officer, who is a fixed wing jet pilot, must be for
15  at least eight years and a commission is held at the pleasure of
16  the President.  The Navy's Personnel Manual, MILPERSMAN 1001-090
17  (¶2), provides that a required time on active duty may be
18  established by a service agreement.  Here, that time is seven
19  years.

20      23.  MILPERSMAN 1331-010 (¶ 4) specifies that if an officer
21  timely declares an intent to resign from active duty, he or she
22  may not receive orders obligating the officer for service beyond
23  this minimum required time.  (Doc. 85, at 6-11).

24      24.  As the motion to dismiss was briefed, Petitioner
25  Gengler filed the present motion to allow him to remain in
26  Chicago and complete his first quarter at the University of
27  Chicago.  (Doc. 81, filed October 13, 2006).  At the suggestion
28  of government counsel, he had sought additional leave from his

1  Commanding Officer.  (Doc. 81, Gengler Decl. at ¶ 17).  That
2  request was denied on October 10, 2006.  (Doc. 81, Gengler Decl.
3  at ¶ 19).

4      25.  The Court heard extended argument on both motions on
5  October 23, 2006.  The motion to dismiss was submitted, and is
6  decided by separate decision.  With respect to Gengler's leave,
7  the Respondents submitted a declaration from the Commanding
8  Officer stating that additional leave was not consistent with
9  Navy policy, and that petitioner Gengler had enrolled in school
10 taking the risk that this case might not be decided by the time
11 his leave was over in November.  (Doc. 89, at ¶¶ 3-6).

12     26.  Petitioner Gengler proposed a solution - that he could
13 return to duty for two short periods and obtain leave that would
14 allow him to complete the quarter in school and comply with Navy
15 policy.  (Doc. 90, at 4).  The Court suggested that Lt. Cmdr.
16 Gengler's Commanding Officer be asked to consider the proposal.
17 On October 27, 2006, Respondents informed Petitioner's counsel
18 that it would not grant additional leave.  (Doc. 92, at 2).

19     27.  Captain Fecht submitted a supplemental declaration,
20 stating this his squadron, VX-9, is experiencing a manning
21 shortage in aircrew billets.  Petitioner Gengler is needed at the
22 command to perform duties as Squadron Duty Officer, managing the
23 daily flight schedule, and assisting with other administrative
24 matters.  He would not fly aircraft, but would backfill for other
25 officers.  (Doc. 94, Fecht Decl. at ¶¶ 4-6).

26     28.  The Court heard extended argument on the present motion
27 on November 1, 2006.  At argument, Petitioner's counsel also
28 stated (and government counsel agreed) that on October 23, 2006,

1  Petitioner Gengler had received orders for his separation from

2  the Navy in April 2007.  This results in service on active duty

3  for an eight-year term.

4      29.  Through counsel, Gengler asked that the Court enlarge

5  him on bond under the inherent power of a habeas corpus court to

6  and including December 8, 2006, or until this case is decided on

7  the merits.  Counsel agreed and it was ordered that for the

8  period Gengler was enlarged on bond, the time on bond would not

9  be credited towards Gengler's required period of service on

10  active duty.

11      30.  In view of the irreconcilable inconsistency of

12  Gengler's service agreement and 10 U.S.C. § 653(a)'s minimum

13  active duty service requirement and substantial presently

14  unresolvable factual and legal issues, it was decided that absent

15  permission for release from custody, the relief Petitioner seeks

16  will be rendered unobtainable.

17              II.  <u>CONCLUSIONS OF LAW</u>

18      1.  This case is a petition for writ of habeas corpus

19  brought under 28 U.S.C. § 2241(c).  Section 2241(c)(1) provides

20  jurisdiction to test the legality of a person's confinement if he

21  is "in custody under or by color of the authority of the United

22  States."  Section 2241(c)(3) provides jurisdiction to determine

23  whether a person is "in custody in violation of the Constitution

24  or laws or treaties of the United States."  Petitioner Gengler

25  alleges that he is under the custody and control of the United

26  States Navy, which exists under "the authority of the United

27  States."  (Doc. 77, at ¶¶ 1-3).  The Petitioner alleges, *inter*

28  *alia*, that he is held in custody of the Navy in violation of the

11

Constitution and laws of the United States because he is required to serve on active duty beyond the period set forth in his Service Agreement with the Navy.  (Doc. 77, at ¶¶ 19, 69, 70, 166).

2.   A district court has the inherent power to enlarge a petitioner on bond pending hearing and decision on his petition for writ of habeas corpus.  The authority "derives from the power to issue the writ itself."  *Marino v. Vasquez*, 812 F.2d 499, 507 (9th Cir. 1987).  *In Scaggs v. Larsen*, 396 U.S. 1206 (1969), Mr. Justice Douglas, sitting as circuit justice, released an enlisted reservist from Army custody pending a decision on the merits of his habeas corpus petition.  The petitioner alleged that he was required to serve beyond his enlisted contract.  Mr. Justice Douglas held that "[a]t the least the issue is substantial and should be resolved."  *Id.* at 1209.

3.   In *Land v. Deeds*, 878 F.2d 318 (9th Cir. 1989), the court of appeals stated that "[b]ail pending a decision in a habeas case is reserved for extraordinary cases involving special circumstances or a high probability of success."  *Id.* at 318-19 (citing *Aronson v. May*, 85 S.Ct. 3, 5 (1964)); *see also United States v. Mett*, 41 F.3d 1281, 1282 (9th Cir. 1994) (following *Land*).  The Court in *Aronson*, cited in *Land*, set out the following in assessing whether bail should be granted on a habeas corpus petition related to a criminal conviction: "[I]t is therefore necessary to inquire whether, in addition to there being substantial questions presented by the appeal, there is some circumstance making this application exceptional and deserving of special treatment in the interests of justice."

12

1   *Id.* at 5.   The *Aronson* Court suggested that a greater showing

2   must be made by a petitioner seeking bail in a criminal

3   conviction habeas "than would be required in a case where

4   applicant had sought to attack by writ of habeas corpus an

5   incarceration not resulting from a judicial determination of

6   guilt."   *Id.*   These cases establish that enlargement on bail may

7   be granted to a habeas corpus petitioner where there are

8   exceptional circumstances and, at a minimum, substantial

9   questions as to the merits.   *Aronson* suggests that the test may

10  be relaxed where, as here, the custody is not related to a

11  criminal conviction.

12      4.   Based on these facts, the Court finds that there are

13  exceptional circumstances present in this case that favor

14  enlargement on bail:

15          a.   The Service Agreement was drafted by the Navy, not

16  Petitioner Gengler.

17          b.   The Navy, not Petitioner Gengler, knew or should

18  have known of the existence of § 653 and of any conflict between

19  their Service Agreement and the provisions of § 653 and the

20  minimum term of active duty.

21          c.   The unusual and exceptional circumstances present

22  here were created by the Navy through its error in drafting the

23  Service Agreement.

24          d.   A reasonable interpretation of the express

25  language of Petitioner's Service Agreement as a whole is that

26  while the obligation to serve as a commissioned Reserve Officer

27  is for a minimum of eight years, and there is no unilateral right

28  to resign a commission, the obligation to serve the active duty

13

1   component of that commission and service is only for seven years.

2            e.   The Service Agreement created Petitioner Gengler's

3   reasonable and justifiable expectation that he would only be

4   required to serve on active duty for seven years after his

5   designation as a Naval Aviator.

6            f.   That expectation was reinforced by language in his

7   Service Agreement providing for a limited ability to extend a

8   period of active duty, as well as by procedures within the Navy

9   to implement a right to release from active duty after service of

10  the minimum required period set forth in a Service Agreement.

11           g.   The Navy did not explain or take any action to

12  resolve the conflict between the active duty term of the service

13  agreement and § 653.

14       5.   Neither Petitioner Gengler nor the Respondents have

15  improperly delayed the litigation of the present case.

16  Respondents' motions to dismiss, which it had a right to file,

17  have delayed discovery and the scheduling of the case for trial.

18  Questions of disputed fact and law prevent the case being decided

19  as a matter of law.

20       6.   The Petition is not before the Court for a ruling on

21  the merits and a decision on the merits cannot be rendered by

22  November 4, 2006.

23       7.   Petitioner Gengler will unduly suffer if he is required

24  to withdraw from the University of Chicago Graduate School of

25  Business prior to the completion of his first quarter of studies.

26       8.   Although the court recognizes that Petitioner Gengler's

27  Commanding Officer granted petitioner's initial leave at

28  Gengler's request and the squadron is not fully manned, there are

**14**

1  nevertheless exceptional circumstances that favor enlargement on
2  bail.

3      9.   The Court also finds that there are, at a minimum,
4  substantial questions going to the merits of the petition.  It is
5  established that the terms of service contracts of enlisted
6  personnel are governed by contract law standards and are
7  enforceable.  *See, e.g., Santiago v. Rumsfeld*, 425 F.3d 549, 554
8  (9th Cir. 2005).  Though there is no case directly on point, at
9  least one district court has held that an officer's agreement to
10 serve additional time as a result of educational programs is also
11 contractual in nature, even though an officer is a Presidential
12 appointee.  *See Wallace v. Brown*, 1979 U.S. Dist. Lexis 10156,
13 *20 n.2 (S.D.N.Y. 1979).

14     10.   The court is troubled by the lack of disclosure, in a
15 contract drafted by the Navy, which results in a mistake from
16 which the Navy seeks to benefit, by considering the express term
17 relating to time of service on active duty to be invalid and
18 unenforceable.

19     11.   This practice creates the risk that every officer
20 candidate, who signs an erroneous agreement without disclosure by
21 the Navy, relating to such a material term, may enter into a
22 service obligation mistakenly, without being fully informed.

23     12.   The exceptional circumstances of this petition to
24 resolve petitioner's right to be released from active duty
25 include that further delay renders nugatory his good faith
26 expectations and belief as to release from active duty on which
27 he relied to his detriment and will obviate any relief in this
28 case.

1    13.   For the reasons set forth above and at the hearing in

2  open court, Petitioner's motion requesting order that Gengler

3  remain in Chicago until December 8, 2006, is hereby GRANTED.

4  Petitioner Gengler is enlarged on bail, and is released from

5  custody of the Respondents beginning on November 4, 2006, and

6  continuing to and including December 8, 2006, after which he will

7  immediately return to the custody of Respondents.

8    14.   To maintain the status quo, the period of time during

9  which Petitioner is enlarged on bail will not be credited towards

10 his requirement of active duty service.

11   15.   The oral motion of the government for a stay made at

12 the end of the hearing, was GRANTED in open court and the

13 execution of this order is STAYED until November 3, 2006, at

14 12:00 noon.

15   TO THE EXTENT ANY FINDING OF FACT CAN BE INTERPRETED AS A

16 CONCLUSION OF LAW OR A CONCLUSION OF LAW CAN BE INTERPRETED AS A

17 FINDING OF FACT, IT SHALL BE SO INTERPRETED.

18

19 SO ORDERED.

20

21 DATED:   November 2, 2006.

22

23                                    ___/s/ Oliver W. Wanger___
                                        OLIVER W. WANGER
24                                   UNITED STATES DISTRICT JUDGE

25

26

27

28

                                  16