UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LT. RICHARD T. GENGLER and LT. DANIEL S. McSEVENEY, <br><br>    Plaintiffs/Petitioners, <br><br>    v. <br><br> UNITED STATES OF AMERICA THROUGH ITS DEPARTMENT OF DEFENSE AND NAVY; AND SECRETARY DONALD C. WINTER, <br><br>    Defendants/Respondents. | 1:06-cv-0362 OWW LJO <br><br> AMENDED FINDINGS OF FACT AND CONCLUSIONS OF LAW RE: MOTION REQUESTING ORDER THAT GENGLER REMAIN IN CHICAGO UNTIL DECEMBER 8, 2006 OR PENDING DECISION ON THE MERITS (DOC. 81) <br><br> AND <br><br> ORDER RE: BAIL ON HABEAS CORPUS PETITION |

Before this Court for decision is Petitioner Richard T. Gengler's motion requesting an order for admission to release from Defendants' custody to permit Gengler to remain in Chicago until December 8, 2006, or pending a decision on the merits of his amended habeas corpus petition. (Doc. 81, filed Oct. 13, 2006). Although there are two Petitioners in this habeas corpus case, Lt. Cmdr. Gengler and Lt. Cmdr. Daniel S. McSeveney, the present motion relates solely to Lt. Cmdr. Gengler. Much of the background and early procedural history of this case is set forth in detail in this Court's Memorandum Decision and Order Re: Defendants' [First] Motion to Dismiss (Doc. 49, filed Aug. 24,

1

2006) at 1-9.

## I. FINDINGS OF FACT

1.   Petitioner Gengler is a Naval Officer and Aviator who is stationed with the Operational Test Evaluation Squadron Nine (VX-9) in China Lake, California. He entered the Navy Reserve on April 12, 1996, upon signing an "Aviation Officer Candidate Program Service Agreement" (hereinafter "the Service Agreement"). Exhibit A, Declaration of Lt. Richard T. Gengler in Support of Motion for Order for Entry of Temporary Restraining Order and Order to Show Cause Re Preliminary Injunction, dated March 29, 2006 (hereinafter "Gengler Decl.") (Doc. 4). The Service Agreement is a contract of adhesion drafted by the Navy and signed by its representative, Lt. Scott A. Potas.[1]

2.   The Service Agreement provides that Gengler will accept a commission as a Reserve Officer in the Navy. (Service Agreement, Doc. 4, Ex. A, at ¶ 1d). The Agreement also states: "a commission as an (sic) Reserve Officer is held at the pleasure of the President." (Doc. 4, Ex. A, at ¶1e(1)).

3.   The Service Agreement further provides that "upon acceptance of a commission, [Gengler] will be required to serve at least eight years as a Reserve Officer in the United States Navy from the date of appointment to commissioned grade" (Doc. 4, Ex. A, at ¶1e(2)), "any portion of this eight-year period not

---

[1] Gengler's Service agreement is identical in content to that of Petitioner McSeveney. Exhibit A, Declaration of Lt. Daniel S. McSeveney in Support of Motion for Order for Entry of Temporary Restraining Order and Order to Show Cause Re Preliminary Injunction, dated April 18, 1996. (Doc. 5).

2

served on active duty will be served on inactive duty." (Doc. 4, Ex. A, at ¶1e(3)). On October 11, 1996, Gengler was appointed as commissioned officer in the Navy Reserve. (Gengler Decl. at ¶ 4). Accordingly, his eight-year minimum period of service as a commissioned Reserve Officer was completed in October 2004.

4. The Service Agreement further states that "a resignation of [Gengler's] commission as a Reserve Officer submitted prior to the completion of this eight-year term will normally be rejected and, after this period, may be accepted or rejected by the President, as the needs of the service may then require." (Doc. 4, Ex. A, at ¶ 1e(4)).

5. Separate from the provisions related to service as a Reserve Officer, the Service Agreement contains specific provisions relating to an agreed-upon period of service on active duty. Paragraph 2 of the Agreement states, "I consent to serve on active duty as a commissioned officer for a period of seven years from date of designation as a Naval Aviator (unless sooner released to inactive duty or discharged by the Chief of Naval Personnel.[]) Doc. 4, Ex. A, at ¶ 2). Petitioner Gengler was designated as a Naval Aviator on April 2, 1999 and therefore his seven-year period of active duty was completed on April 2, 2006.[2]

---

[2] During oral argument on this motion, Petitioner's counsel represented to the Court that Gengler's designation as a Naval Aviator occurred on April 2, 1999. The government did not dispute this and admits in its Declaration of Lieutenant Commander Jeremy W. Gunther, USN dated July 27, 2006, submitted in opposition to Petitioners' ex parte motion for order for entry of temporary restraining order and order to show cause re entry of preliminary injunction, that Gengler was "winged" in April 1999.

3

At present he remains in an active duty status.

   6.   Another paragraph in the Service Agreement sets forth the procedure by which Gengler may effect his release from active duty: "I must notify the Chief of Naval Personnel . . . of this desire at least nine months prior to the end of my obligated service . . . failure to so notify the Chief of Naval Personnel . . . constitutes a desire on my part to be extended on active duty for an indefinite period of time."  (Doc. 4, Ex. A, at ¶ 2).[3]

   8.   The following statute was enacted by Congress in 1989, some seven years before the Navy presented Gengler with his Service Agreement:

> § 653.  Minimum Service Requirement for Certain flight Crew Positions.
>
> (a) Pilots.--The minimum service obligation of any member who successfully completes training in the armed forces as a pilot shall be 8 years, if the member is trained to fly fixed-wing jet aircraft, or 6 years, if the member is trained to fly any other type of aircraft.
> ...
> (c) Definition.  In this section, the term "service obligation" means the period of active duty or, in the case of a member of a reserve component who completed flight training in an active duty for training status as a member of a reserve component, the period of service in an active status in the Selected Reserve required to be served after -
>
> (1) completion of undergraduate pilot training in the case of training, as a pilot;

   9.   The eight-year statutory service term of § 653 sets out a minimum active duty service obligation but does not state that

---

[3] The Service Agreement quotes 10 U.S.C. sections 671a and 671b, which allow for limited extensions of active duty service in wartime.  (Doc. 4, Ex. A, at ¶ f).  The Navy has not invoked those statutes in this case.

any contract made in violation of the term is unenforceable.[4]

10.  Gengler's eight-year period of active duty after successful completion of training as a pilot, terminates on April 2, 2007.

11.  Lt. Cmdr. Gengler has served with distinction during his ten years in the Navy.  He has made two full deployments as a strike fighter pilot on the aircraft carrier, USS CONSTELLATION. He has flown numerous combat missions and logged combat time in Operations Iraqi Freedom, Enduring Freedom, Southern Watch, and others.  Petitioner Gengler has received two Air Medals (with Combat Distinguishing Device), the Navy and Marine Corps Commendation Medal (with Combat Distinguishing Device), the Navy and Marine Corps Achievement Medal, among others.  Two of his awards, an Air Medal and the Navy and Marine Corps Commendation Medal, were given to him for individual acts of bravery as a strike fighter pilot during Operation Iraqi Freedom.  (Doc. 77, at ¶¶ 3-6).

12.  Gengler complied with his obligation to timely notify the Chief of Naval Personnel of his request for Release from Active Duty ("RAD") by submission of a series RAD requests dated January 21, 2004, February 9, 2005, March 8, 2006 and July 21, 2006.  (Doc. 77, at ¶¶ 97-98).  The Navy denied all of the requests and Gengler filed the appropriate administrative appeals all of which were denied citing a variety of reasons, but all

---

[4] Gengler alleges that the Service Agreement with the seven-year term was routinely used by the Navy from at least 1990 through 1996.  (Verified Third Amended Petition, Doc. 77, filed October 12, 2006, at ¶ 14).

essentially based on the position that he should serve eight years of active duty following flight training instead of seven. (Doc. 77, ¶¶ 99, 109-110). On February 13, 2006, the Navy informed Lt. Cmdr. Gengler that he had exhausted his administrative remedies. (Doc. 4, Ex. E; Doc. 77, at ¶ 101). This case was filed March 31, 2006.

13. Petitioner Gengler has also alleged that between 2002 and 2004, the Navy has discharged at least eight Naval Aviators upon completion of their contractual seven-year term of active duty. (Doc. 77, at ¶¶ 48-56). He also asserts in his Petition and other documents, that the Navy has a surplus of Naval Aviators and has implemented various voluntary and involuntary separation Programs to discharge several hundred officers including approximately 300 pilots in September 2006. (Doc. 77, at ¶¶ 37-47; Mem. Dec. Doc. 49, at 6-7).

14. The March 31, 2006 Complaint alleges five causes of action, including one habeas corpus claim. (Doc. 1). Petitioner also sought a temporary restraining order to prevent the Respondents from changing his status to deployable or sending him outside the Continental United States. (Mem. Dec., Doc. 49, at 8).

15. The parties reached an agreement as to non-deployment. There was a period of internal discussion by the Navy regarding the discharge request. At some point prior to July 25, 2006, the Navy notified Petitioner's counsel that Gengler would not be discharged.

16. The parties then litigated the motion for a temporary restraining order, which was denied on August 10, 2006, except

that the Navy would be required to provide at least 20 days' notice of any intent to change Petitioner Gengler's current non-deployment status so he could make application for appropriate relief to the Court should that occur.  (Order Re: Plaintiff's Ex Parte Motion for Entry of Temporary Restraining Order and Order to Show Cause Re Entry of Preliminary Injunction; and Order Re Petition for Habeas Corpus (Doc. 37); (Mem. Dec., Doc. 49, at 8-9).

   17.  On August 3, 2006, in lieu of Answer, the government filed its first motion to dismiss.  (Doc. 31).  Following briefing, that motion was decided on August 24, 2006.  The motion to dismiss for lack of subject matter jurisdiction was granted in part and denied in part, finding that the only valid basis for jurisdiction is habeas corpus.  (Mem. Dec., Doc. 49, at 43-44).  The motion to dismiss for failure to state a claim, pursuant to Fed. R. Civ. Pro. 12(b)(6), was granted in part and denied in part.  The motion to dismiss was denied without prejudice, subject to repleading, on a contract-based habeas corpus claim.  The court identified a list of factors to assist it in determining whether the seven-year active duty provision in the Service Agreement would be enforced, or whether the statutory eight-year term must be given effect.  The motion to dismiss was granted with leave to amend on the equitable estoppel claim; requiring re-pleading with greater specificity.  (Mem. Dec., Doc. 49, at 36-39, 44).

   18.  Following this ruling, Petitioner Gengler filed several subsequent Petitions for Writs of Habeas Corpus.  The present petition (Doc. 77) was ordered filed at a hearing on October 23,

2006.

19.  While the case was pending, Lt. Cmdr. Gengler's circumstances changed.  He was admitted to the Graduate School of Business at the University of Chicago.  (Doc. 77, at ¶ 122).  The term was scheduled to begin in September 2006.  In summer 2006, Petitioner Gengler trained his replacement at his squadron.  (Doc. 77, at ¶ 130).  He asked his Commanding Officer, Captain Fecht, for 60 days of leave to attend school.  The request was granted on August 16, 2006.  (Doc. 77, at ¶¶ 131-134).  Petitioner Gengler was also told approximately a week later that he would no longer fly for the Navy. (Doc. 81, at 1).  Gengler paid $17,000 in tuition and fees and enrolled in school.  (Doc. 77, at ¶ 141).  The first quarter at business school is the most critical.  If Petitioner Gengler is required to leave before it is completed, he will be forced to drop out or fail school and lose his tuition.  (Doc. 81, Gengler Decl. at ¶¶ 14-16).

20.  The Respondents filed a second motion, to dismiss the habeas corpus petitions, on October 12, 2006.  (Doc. 78).  The government argues that there is no subject matter jurisdiction and that the equitable estoppel claim fails to state a cause of action.  According to the government, an officer's commission is indefinite in term, and an officer serves at the pleasure of the President and can only resign a commission effective upon acceptance, which means, a court may not order that the resignation be accepted and the officer discharged.  (Doc. 78, at 7-17).  The government cites SECNAV Instruction 1920.6C and MILPERSMAN 1920-130, 1920-200 for these propositions.  (Doc. 78, at 14-15).  Under this position, the length of time of active

8

1  duty service is limited by neither the Service Agreement nor by
2  § 653.
3       21.  The government further argues the court has no
4  authority to determine the legality of the contract in dispute,
5  the Navy's actions, and cannot meddle in the Navy's conduct of
6  its business.
7       22.  Petitioner Gengler counters that the government
8  conflates two separate concepts: service as a commissioned
9  Reserve Officer and service on active duty.  A Reserve Officer
10 may serve either on active or inactive duty status.  The Service
11 Agreement provides for service on active duty for seven years
12 following successful completion of flight training, and this is
13 fully consistent with the requirement that service as a
14 commissioned officer, who is a fixed wing jet pilot, must be for
15 at least eight years and a commission is held at the pleasure of
16 the President.  The Navy's Personnel Manual, MILPERSMAN 1001-090
17 (¶2), provides that a required time on active duty may be
18 established by a service agreement.  Here, that time is seven
19 years.
20      23.  MILPERSMAN 1331-010 (¶ 4) specifies that if an officer
21 timely declares an intent to resign from active duty, he or she
22 may not receive orders obligating the officer for service beyond
23 this minimum required time.  (Doc. 85, at 6-11).
24      24.  As the motion to dismiss was briefed, Petitioner
25 Gengler filed the present motion to allow him to remain in
26 Chicago and complete his first quarter at the University of
27 Chicago.  (Doc. 81, filed October 13, 2006).  At the suggestion
28 of government counsel, he had sought additional leave from his

1  Commanding Officer.  (Doc. 81, Gengler Decl. at ¶ 17).  That
2  request was denied on October 10, 2006.  (Doc. 81, Gengler Decl.
3  at ¶ 19).

4     25.  The Court heard extended argument on both motions on
5  October 23, 2006.  The motion to dismiss was submitted, and is
6  decided by separate decision.  With respect to Gengler's leave,
7  the Respondents submitted a declaration from the Commanding
8  Officer stating that additional leave was not consistent with
9  Navy policy, and that petitioner Gengler had enrolled in school
10 taking the risk that this case might not be decided by the time
11 his leave was over in November.  (Doc. 89, at ¶¶ 3-6).

12     26.  Petitioner Gengler proposed a solution - that he could
13 return to duty for two short periods and obtain leave that would
14 allow him to complete the quarter in school and comply with Navy
15 policy.  (Doc. 90, at 4).  The Court suggested that Lt. Cmdr.
16 Gengler's Commanding Officer be asked to consider the proposal.
17 On October 27, 2006, Respondents informed Petitioner's counsel
18 that it would not grant additional leave.  (Doc. 92, at 2).

19     27.  Captain Fecht submitted a supplemental declaration,
20 stating this his squadron, VX-9, is experiencing a manning
21 shortage in aircrew billets.  Petitioner Gengler is needed at the
22 command to perform duties as Squadron Duty Officer, managing the
23 daily flight schedule, and assisting with other administrative
24 matters.  He would not fly aircraft, but would backfill for other
25 officers.  (Doc. 94, Fecht Decl. at ¶¶ 4-6).

26     28.  The Court heard extended argument on the present motion
27 on November 1, 2006.  At argument, Petitioner's counsel also
28 stated (and government counsel agreed) that on October 23, 2006,

10

1  Petitioner Gengler had received orders for his separation from
2  the Navy in April 2007.  This results in service on active duty
3  for an eight-year term.
4       29.  Through counsel, Gengler asked that the Court enlarge
5  him on bond under the inherent power of a habeas corpus court to
6  and including December 8, 2006, or until this case is decided on
7  the merits.  Counsel agreed and it was ordered that for the
8  period Gengler was enlarged on bond, the time on bond would not
9  be credited towards Gengler's required period of service on
10 active duty.
11      30.  In view of the irreconcilable inconsistency of
12 Gengler's service agreement and 10 U.S.C. § 653(a)'s minimum
13 active duty service requirement and substantial presently
14 unresolvable factual and legal issues, it was decided that absent
15 permission for release from custody, the relief Petitioner seeks
16 will be rendered unobtainable.

## II.  CONCLUSIONS OF LAW

18      1.  This case is a petition for writ of habeas corpus
19 brought under 28 U.S.C. § 2241(c).  Section 2241(c)(1) provides
20 jurisdiction to test the legality of a person's confinement if he
21 is "in custody under or by color of the authority of the United
22 States."  Section 2241(c)(3) provides jurisdiction to determine
23 whether a person is "in custody in violation of the Constitution
24 or laws or treaties of the United States."  Petitioner Gengler
25 alleges that he is under the custody and control of the United
26 States Navy, which exists under "the authority of the United
27 States."  (Doc. 77, at ¶¶ 1-3).  The Petitioner alleges, *inter
28 alia*, that he is held in custody of the Navy in violation of the

11

Constitution and laws of the United States because he is required to serve on active duty beyond the period set forth in his Service Agreement with the Navy. (Doc. 77, at ¶¶ 19, 69, 70, 166).

2. A district court has the inherent power to enlarge a petitioner on bond pending hearing and decision on his petition for writ of habeas corpus. The authority "derives from the power to issue the writ itself." *Marino v. Vasquez*, 812 F.2d 499, 507 (9th Cir. 1987). *In Scaggs v. Larsen*, 396 U.S. 1206 (1969), Mr. Justice Douglas, sitting as circuit justice, released an enlisted reservist from Army custody pending a decision on the merits of his habeas corpus petition. The petitioner alleged that he was required to serve beyond his enlisted contract. Mr. Justice Douglas held that "[a]t the least the issue is substantial and should be resolved." *Id.* at 1209.

3. In *Land v. Deeds*, 878 F.2d 318 (9th Cir. 1989), the court of appeals stated that "[b]ail pending a decision in a habeas case is reserved for extraordinary cases involving special circumstances or a high probability of success." *Id.* at 318-19 (citing *Aronson v. May*, 85 S.Ct. 3, 5 (1964)); *see also United States v. Mett*, 41 F.3d 1281, 1282 (9th Cir. 1994) (following *Land*). The Court in *Aronson*, cited in *Land*, set out the following in assessing whether bail should be granted on a habeas corpus petition related to a criminal conviction: "[I]t is therefore necessary to inquire whether, in addition to there being substantial questions presented by the appeal, there is some circumstance making this application exceptional and deserving of special treatment in the interests of justice."

12

*Id.* at 5. The *Aronson* Court suggested that a greater showing must be made by a petitioner seeking bail in a criminal conviction habeas "than would be required in a case where applicant had sought to attack by writ of habeas corpus an incarceration not resulting from a judicial determination of guilt." *Id.* These cases establish that enlargement on bail may be granted to a habeas corpus petitioner where there are exceptional circumstances and, at a minimum, substantial questions as to the merits. *Aronson* suggests that the test may be relaxed where, as here, the custody is not related to a criminal conviction.

    4. Based on these facts, the Court finds that there are exceptional circumstances present in this case that favor enlargement on bail:

       a. The Service Agreement was drafted by the Navy, not Petitioner Gengler.

       b. The Navy, not Petitioner Gengler, knew or should have known of the existence of § 653 and of any conflict between their Service Agreement and the provisions of § 653 and the minimum term of active duty.

       c. The unusual and exceptional circumstances present here were created by the Navy through its error in drafting the Service Agreement.

       d. A reasonable interpretation of the express language of Petitioner's Service Agreement as a whole is that while the obligation to serve as a commissioned Reserve Officer is for a minimum of eight years, and there is no unilateral right to resign a commission, the obligation to serve the active duty

13

1  component of that commission and service is only for seven years.
2           e.   The Service Agreement created Petitioner Gengler's
3  reasonable and justifiable expectation that he would only be
4  required to serve on active duty for seven years after his
5  designation as a Naval Aviator.
6           f.   That expectation was reinforced by language in his
7  Service Agreement providing for a limited ability to extend a
8  period of active duty, as well as by procedures within the Navy
9  to implement a right to release from active duty after service of
10 the minimum required period set forth in a Service Agreement.
11          g.   The Navy did not explain or take any action to
12 resolve the conflict between the active duty term of the service
13 agreement and § 653.
14      5.   Neither Petitioner Gengler nor the Respondents have
15 improperly delayed the litigation of the present case.
16 Respondents' motions to dismiss, which it had a right to file,
17 have delayed discovery and the scheduling of the case for trial.
18 Questions of disputed fact and law prevent the case being decided
19 as a matter of law.
20      6.   The Petition is not before the Court for a ruling on
21 the merits and a decision on the merits cannot be rendered by
22 November 4, 2006.
23      7.   Petitioner Gengler will unduly suffer if he is required
24 to withdraw from the University of Chicago Graduate School of
25 Business prior to the completion of his first quarter of studies.
26      8.   Although the court recognizes that Petitioner Gengler's
27 Commanding Officer granted petitioner's initial leave at
28 Gengler's request and the squadron is not fully manned, there are

nevertheless exceptional circumstances that favor enlargement on bail.

9.  The Court also finds that there are, at a minimum, substantial questions going to the merits of the petition.  It is established that the terms of service contracts of enlisted personnel are governed by contract law standards and are enforceable.  *See, e.g., Santiago v. Rumsfeld*, 425 F.3d 549, 554 (9th Cir. 2005).  Though there is no case directly on point, at least one district court has held that an officer's agreement to serve additional time as a result of educational programs is also contractual in nature, even though an officer is a Presidential appointee.  *See Wallace v. Brown*, 1979 U.S. Dist. Lexis 10156, *20 n.2 (S.D.N.Y. 1979).

10.  The court is troubled by the lack of disclosure, in a contract drafted by the Navy, which results in a mistake from which the Navy seeks to benefit, by considering the express term relating to time of service on active duty to be invalid and unenforceable.

11.  This practice creates the risk that every officer candidate, who signs an erroneous agreement without disclosure by the Navy, relating to such a material term, may enter into a service obligation mistakenly, without being fully informed.

12.  The exceptional circumstances of this petition to resolve Petitioner's right to be released from active duty include that further delay renders nugatory his good faith expectations and belief as to release from active duty on which he relied to his detriment and will obviate any relief in this case.

13.  For the reasons set forth above and at the hearing in open court, Petitioner's motion requesting order that Gengler remain in Chicago until December 8, 2006, is hereby GRANTED. Petitioner Gengler is enlarged on bail, and is released from custody of the Respondents beginning on November 4, 2006, and continuing to and including December 8, 2006, after which he will immediately return to the custody of Respondents.

14.  To maintain the status quo, the period of time during which Petitioner is enlarged on bail will not be credited towards his requirement of active duty service.

15.  The oral motion of the government for a stay made at the end of the hearing, was GRANTED in open court and the execution of this order is STAYED until November 3, 2006, at 12:00 noon.

16.  This order in no way discharges Petitioner Gengler from his appointment as a commissioned officer in the United States military.

TO THE EXTENT ANY FINDING OF FACT CAN BE INTERPRETED AS A CONCLUSION OF LAW OR A CONCLUSION OF LAW CAN BE INTERPRETED AS A FINDING OF FACT, IT SHALL BE SO INTERPRETED.

THIS ORDER SUPERCEDES THE PRIOR FINDINGS OF FACT AND CONCLUSIONS OF LAW ISSUED NOVEMBER 2, 2006 (Doc. 100).

SO ORDERED.
DATED:  November 3, 2006.

                             /s/ Oliver W. Wanger
                               OLIVER W. WANGER
                             UNITED STATES DISTRICT JUDGE